UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOSE RIVERA COLON,                              :
                          Plaintiff,            :
                                                :
v.                                              :      **OPINION AND ORDER**
                                                :
C. GUNSETT; GUTWEIN; MANGINO; R.                :      22 CV 635 (VB)
FLANAGAN; A. COLOMBOS; J. CROFOOT;              :
S. HAZELWOOD; and DR. UZO,                      :
                          Defendants.           :
------------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Jose Rivera Colon, proceeding pro se and in forma pauperis, brings this Section

1983 action against defendants Sergeant ("Sgt.") Gunsett, Hearing Officer Gutwein, Sgt.

Mangino, Correction Officer ("C.O.") Flanagan, C.O. Colombos, C.O. Crofoot, C.O.

Hazelwood, and Facility Medical Director Dr. Uzo.  Defendants are New York State Department

of Corrections and Community Supervision ("DOCCS") employees who worked at Green Haven

Correctional Facility ("Green Haven") at the time of the events alleged in the complaint.

    Plaintiff alleges his constitutional rights were violated when defendants searched his

prison cell, attacked and sprayed him with a chemical agent, and thereafter denied him adequate

medical care.  Plaintiff also alleges he was subjected to constitutionally deficient disciplinary

proceedings.

    Now pending is defendants' motion to dismiss the complaint in part pursuant to Rules

12(b)(1) and 12(b)(6), which seeks to dismiss all of plaintiff's claims except for his Eighth

Amendment excessive force claims against C.O.s Crofoot, Flanagan, and Hazelwood in their

individual capacities.  (Doc. #22).[1]

---

[1]    Although defendants invoke only Rule 12(b)(6) in their motion, their argument regarding
suits against officers in their official capacities "is more appropriately characterized as a [motion

1

For the reasons set forth below, the motion is GRANTED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded factual allegations in the complaint, documents attached thereto, and certain factual allegations in plaintiff's opposition,[2] and draws all reasonable inferences in plaintiff's favor, as summarized below.[3]

During the complained-of events, plaintiff was incarcerated at Green Haven.

Plaintiff alleges on or about December 23, 2020, Sgt. Gunsett authorized C.O.s Crofoot and Flanagan to secure plaintiff and search his cell "for 'suspicion'" because Gunsett had received "inteligence that plaintiff was under the influence of some intoxicant." (Doc. #2 ("Compl.") at ECF 5).[4] Plaintiff claims he "was told to come up to his cell bars" to be searched. (Id.). However, "due to a language barrier plaintiff did not understand completely and fully but

---

for] dismissal under Rule 12(b)(1), as it [is] based on sovereign immunity." Morabito v. New York, 803 F. App'x 463, 465 n. 2 (2d Cir. 2020) (summary order).

Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[2]     On December 6, 2022, plaintiff filed a document titled "Motion Don't Dismiss," written largely in Spanish. (Doc. #33). On December 7, 2022, the Court ordered plaintiff to refile his opposition to the motion with an English translation or file an opposition in English. (Doc. #34). On December 27, 2022, plaintiff filed an opposition to the motion in English, which is the operative opposition. (Doc. #36 ("Opp.")).

[3]     Because plaintiff is proceeding pro se, the Court considers new allegations in the opposition, to the extent they are consistent with the complaint, as explained in Part III.A infra. See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016).

[4]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

understood 'search' and went to the back of his cell and started disrobing." (Id.). Next, Flanagan allegedly sprayed a "chemical agent in plaintiff's face," emptying "a whole canister of the chemical agent" "for the sole purpose of inflicting harm." (Id.). Plaintiff alleges Crofoot then entered the cell, "started to assault plaintiff about the face and body," placed plaintiff in mechanical restraints, and sprayed plaintiff "once again in the facial area emptying another canister of the chemical agent." (Id.).

Thereafter, plaintiff was allegedly "subdued" and taken to Green Haven's medical unit, where he was given medical attention for "the chemical agent only." (Compl. at ECF 5). Plaintiff claims "another assault upon plaintiff took place" while C.O. Colombos and non-party C.O. Dakin were escorting him to a medical unit isolation cell. (Id. at ECF 5–6). Then, C.O. Hazelwood, who was stationed in this area, allegedly "took the opportunity after plaintiff's assault" and "used another whole canister of chemical agent on plaintiff even after" he complied with the C.O.s' "orders to calm down." (Id. at ECF 6).

Plaintiff alleges he suffered abrasions to his ribs (where he "was struck multiple times"), shoulder, and back, as well as lumps on his forehead, and his "lip was split" such that his "tooth came right through." (Compl. at ECF 6). He describes these injuries as "superficial except the disfigurement of plaintiff's lip due to being hit in that area." (Id.). At the medical unit, plaintiff allegedly "tried to get medical staff to tend to his injuries" but "was totally ignored and was only seen visually about injuries and was NEVER seen for a follow-up." (Id.). His "pleas for even a routine 'sick-call'" were allegedly "ignored by Dr. Uzo." (Opp. at ECF 4). However, the Use of Force Report attached to plaintiff's complaint states plaintiff was "uncooperative" and "refused nursing care, vital signs, and first aide," yet he was "STABLE." (Compl. at ECF 7).

In plaintiff's opposition, he makes several new allegations about these events. For example, plaintiff alleges he has asthma and breathing problems. Further, C.O. Flanagan allegedly stated Sgt. Gunsett also authorized the cell search because he suspected plaintiff "had a WEAPON." (Opp. at ECF 3). In addition, plaintiff alleges C.O. Flanagan claimed plaintiff "had a weapon under my Bed," but "a cell search performed by C.O[.] Moore" found "[n]o contraband," as documented in a "Cell/Frisk Receipt." (Id.). Plaintiff also claims the events in the medical unit "happen[e]d in front of the Supervisor Sgt. Gunsett and Sgt. Mangino." (Id. at ECF 4). Further, plaintiff claims during the aforementioned events, the officers failed to wear body cameras, which are required for inmate and officer safety "[w]hen searching for weapon or suspicions of intoxication." (Id. at ECF 3). He also alleges "Green Haven Hospital has cameras which [r]ecorded nothing but you can hear everything." (Id. at ECF 4).

Furthermore, the opposition contains new allegations concerning a disciplinary hearing. On an unspecified date, Hearing Officer Gutwein allegedly found plaintiff guilty of all charges "with no substantial evidence" and sentenced him to 300 days in Green Haven's Special Housing Unit ("SHU"), as well as "7 mon[ths] and 6 days lose packages" and commissary. (Opp. at ECF 4). Plaintiff claims he is "mentally affected by my SHU confinement." (Id.).

Plaintiff seeks $700,000 in compensatory and punitive damages.

## DISCUSSION

I.    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v.

Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).[5] "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[5]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.     Subject Matter Jurisdiction

Defendants argue plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment, and thus, the Court lacks subject matter jurisdiction over these claims.

The Court agrees.

State officers sued in their official capacities are immune from suit under the Eleventh Amendment absent a state's consent or a congressional abrogation of state sovereign immunity. Clark v. Schroeder, 847 F. App'x 92, 93–94 (2d Cir. 2021) (summary order), cert. denied, 142 S. Ct. 341 (2021). "New York has not waived its immunity, nor has Congress abrogated it." Li v. Lorenzo, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order). Further, the Eleventh Amendment bars claims for monetary damages against defendants acting in their official capacities. See Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).

Here, all defendants are DOCCS employees and, thus, state officials. Claims against them in their official capacities are therefore barred by the Eleventh Amendment and dismissed. See, e.g., Robinson v. Tillotson, 2018 WL 4682226, at *8 (S.D.N.Y. Sept. 27, 2018).

III.     Failure to State a Claim

The Court liberally construes the complaint and opposition to bring Section 1983 claims for: (i) deliberate indifference to serious medical needs, (ii) an unconstitutional cell search, (iii) excessive force, (iv) due process violations arising out of a disciplinary hearing, and (v) failure to intervene.

A.     New Allegations and Claims in Plaintiff's Opposition

As an initial matter, defendants argue new allegations and claims in plaintiff's opposition "cannot serve to defeat the pending partial motion because they are not part of the operative Complaint." (Doc. #37 ("Defs. Reply") at 2–3).

The Court agrees with respect to plaintiff's new allegations and claims about the disciplinary hearing and Sgts. Gunsett and Mangino's alleged failure to intervene, but disagrees with respect to allegations which elaborate upon the facts and claims plausibly alleged in the complaint.

For pro se plaintiffs, "it is appropriate . . . to consider factual allegations made in their opposition papers, so long as the allegations are consistent with the complaint." Kelley v. Universal Music Grp., 2016 WL 5720766, at *6. Although "a pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); see Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir. 2008) (summary order)

7

(affirming dismissal of a pro se plaintiff's new constitutional challenge, first raised in an

opposition, because the "complaint did not encompass that claim").

Here, the Court may properly consider new factual allegations that are consistent with the

facts and claims in the complaint. Thus, for example, it is appropriate for the Court to consider

plaintiff's allegations elaborating upon the purported cell search, assaults, and medical treatment.

However, to the extent plaintiff purports to bring a new failure to intervene claim against Sgts.

Gunsett and Mangino based on the new allegation that "all this happened in front of" them (Opp.

at ECF 4), and his general allegation that "defendants participated in, or witnessed and failed to

intervene in the assault of plaintiff" (Opp. at ECF 2), the complaint could not have been

construed to allege this claim. Accordingly, the Court declines to consider the new failure to

intervene claim in ruling on the motion. See Davila v. Lang, 343 F. Supp. 3d at 267.

In addition, plaintiff's opposition includes new allegations—and presumably a new

claim—regarding a purportedly deficient disciplinary hearing before Hearing Officer Gutwein,

which resulted in plaintiff being sent to the SHU. In the complaint, plaintiff did not allege due

process violations arising out of this hearing. Aside from plaintiff's threadbare request for

$200,000 in damages "for the time spent in Special Housing Unit" (Compl. at ECF 6), the

complaint does not mention a disciplinary hearing, the SHU, or any other disciplinary measures

imposed on him. Even reading the complaint liberally, as required, plaintiff's allegations about

the disciplinary hearing "go well beyond merely elaborating on the facts alleged in the

Complaint and apparently are intended to support new legal theories." Mira v. Argus Media,

2017 WL 1184302, at *3 n.4 (S.D.N.Y. Mar. 29, 2017). As such, "the Court declines to consider

them here." Id.

Accordingly, plaintiff's failure to intervene claim and any claim premised on the allegedly deficient disciplinary hearing are dismissed.[6]

B.     Deliberate Indifference to Medical Needs Claim

Defendants contend plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs must be dismissed because he has not alleged a sufficiently serious inadequacy in his medical care.

The Court agrees.

1.     Legal Standard

Courts have construed the Eighth Amendment to protect prison inmates' rights to adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). To state a deliberate indifference to medical needs claim, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. This test has an objective component and a subjective component: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts.

First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "to take

---

[6]     The Court further addresses these new claims in Part IV infra, in which it grants plaintiff leave to file an amended complaint.

reasonable measures in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).

Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id. Then, courts look to "the alleged inadequate treatment, not the underlying condition alone," and consider "the effectiveness of the treatment the prisoner received, and the harm that resulted from the alleged shortfalls." Sanders v. City of New York, 2018 WL 3117508, at *8 (S.D.N.Y. June 25, 2018).

To plead the subjective component, a plaintiff must allege the prison official acted with "deliberate indifference," which is the equivalent of "subjective recklessness." Salahuddin v. Goord, 467 F.3d at 280. "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was aware of facts from which one could infer that a substantial risk of serious harm existed, and that the defendant actually drew that inference." Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order).

2.     Application

Plaintiff fails plausibly to allege a sufficiently serious inadequacy in his medical care.

As an initial matter, plaintiff alleges he received some medical care for his injuries, notwithstanding his claim that he was "totally ignored" by medical staff and Dr. Uzo. (Opp. at ECF 4). Specifically, plaintiff alleges he received medical attention for the injuries he sustained

from the chemical agent and was "seen visually" regarding his injuries. (Compl. at ECF 5–6).

Because the alleged "inadequacy is in the medical treatment given," the Court must determine

the risk of harm plaintiff faced due to the purported inadequacy. Goris v. Breslin, 402 F. App'x

582, 585 (2d Cir. 2010) (summary order).

Although plaintiff does not specify how his treatment was inadequate, his allegations

seem to suggest Dr. Uzo or other medical staff should have "tend[ed] to his injuries" from the

alleged assaults, "seen [him] for a follow-up" visit, or responded to his request for "a routine

'sick-call.'" (See Opp. at ECF 4). However, plaintiff does not plead "he suffered chronic pain

or any other medical condition as a result of [the inadequate treatment], for how long any such

pain or condition persisted, or whether he has any permanent injuries following the assault."

Alexander v. Cuomo, 2018 WL 2041576, at *9 (N.D.N.Y. Feb. 26, 2018). Indeed, any claim

that inadequate care exposed plaintiff to serious harm is undermined by the Use of Force Report

attached to the complaint, which states plaintiff was "uncooperative" and "refused nursing care,

vital signs, and first aide to care for abrasions and skin opening," but nevertheless was not

actively bleeding and was "STABLE." (Compl. at ECF 7–8).

Also, plaintiff's alleged injuries are insufficient to sustain a medical needs claim.

First, although plaintiff alleges he generally suffers from asthma and breathing problems,

he does not claim he experienced an asthma attack, had difficulties breathing, or experienced

other adverse effects after being sprayed with the chemical agent. Exposure to a chemical agent,

even when a plaintiff is asthmatic, is an insufficiently serious injury in the absence of allegations

that he suffered an actual asthma attack or other adverse effects. See Williams v. City of New

York Dep't of Corr., 2020 WL 3893929, at *5 (S.D.N.Y. July 10, 2020) ("[W]hile merely being

an asthmatic (a person susceptible to asthma attacks) is not a condition that is severe or

sufficiently serious, [courts] distinguish the mere existence of the condition from the situation in which an inmate is suffering an actual attack.").

Second, plaintiff's self-described "superficial" abrasions to his ribs, shoulder, and back, and lumps on his forehead (Compl. at ECF 6), are also insufficient. See Boykins v. Lopez, 2022 WL 2307684, at *9 (S.D.N.Y. June 27, 2022) ("[D]istrict courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference claim.").

Third, plaintiff's claimed "disfigurement"—his split lip, arguably his most serious injury—likewise has been held to be insufficiently serious. See, e.g., Rickett v. Orsino, 2013 WL 1176059, at *17 (S.D.N.Y. Feb. 20, 2013) (collecting cases and holding plaintiff's allegations he suffered "a split lip, which bled and became swollen" and "needed stitches," yet "healed a few weeks after the incident," did not constitute a serious enough medical condition), report and recommendation adopted, 2013 WL 1155354, at *4 (S.D.N.Y. Mar. 21, 2013).

Accordingly, plaintiff's deliberate indifference to medical needs claim must be dismissed.

C.     Cell Search Claim

Defendants argue plaintiff cannot state a claim for an unconstitutional cell search because inmates have no right of privacy in their cells.

The Court agrees.

1.     Legal Standard

The Fourth Amendment does not apply to the unwarranted search of convicted prisoner's cell, as prisoners have no reasonable expectation of privacy in their cells. Hudson v. Palmer, 468 U.S. 517, 526 (1984). "Prisoners, unlike pretrial detainees, retain no Fourth Amendment

reasonable expectation of privacy against searches of their cells, even those made to harass."
Carzoglio v. Abrams, 2022 WL 2193376, at *7 (S.D.N.Y June 17, 2022).

Further, "[a] convict has no expectation of privacy in his prison cell." Willis v. Artuz,
301 F.3d 65, 66 (2d Cir. 2002) (citing Hudson v. Palmer, 468 U.S. 517). "The curtailment of
certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs
and objectives of prison facilities, chief among which is internal security." Hudson v. Palmer,
468 U.S. at 524. "The only constitutional limit on the search of a prison cell is imposed by the
Eighth Amendment's bar against cruel and unusual punishment." Jones v. Harris, 665 F. Supp.
2d 384, 395 (S.D.N.Y. 2009). "[I]f the cell search lacked any legitimate penological interest and
was intended solely to harass—then it may be actionable." Id.

To adequately plead a cell search violated the Eighth Amendment, a prisoner must allege
facts suggesting defendants "ordered the searches with the specific intent to cause plaintiff harm
and that the searches in fact caused him harm." Boyd v. Doe #1, 2019 WL 5287973, at *10
(N.D.N.Y. Oct. 18, 2019). Further, "the violation must be: (i) objectively serious, and (ii)
committed by a defendant with subjective culpability." Carzoglio v. Abrams, 2022 WL
2193376, at *8.

      2.     Application

The Eighth Amendment (not the Fourth Amendment) applies here because plaintiff was a
convicted prisoner during the cell search. (Compl. at ECF 2). Plaintiff claims Sgt. Gunsett,
suspecting plaintiff had a weapon and was intoxicated, authorized C.O.s Crofoot and Flanagan to
search plaintiff's cell. During the search, plaintiff was allegedly "told to come up to his cell
bars" to be searched; "due to a language barrier plaintiff did not understand completely and fully
but understood 'search' and went to the back of his cell and started disrobing." (Id.). Finally,

plaintiff alleges C.O. Flanagan claims he "had a weapon under [his] bed. There was a cell search performed by C.O. Moore" which resulted in "a Cell/Frisk Receipt with a determination of [n]o contraband found." (Opp. at ECF 3).

Plaintiff alleges C.O.s Crofoot and Flanagan searched his cell once. He also mentions that non-party C.O. Moore searched his cell, but does not specify whether this was a separate search. Even if it was, two cell searches "do not rise to the level of a constitutional deprivation." Stewart v. Richardson, 2019 WL 719638, at **5–6 (S.D.N.Y. Feb. 20, 2019) (collecting cases and determining three cell searches over five weeks was not objectively serious).

Plaintiff also cannot satisfy the subjective prong. Defendants allegedly searched plaintiff's cell in response to a report that he was intoxicated, as well as suspicion that he had a weapon. Even though plaintiff claims no contraband was located, "[c]ontrolling contraband is a legitimate penological interest, and corrections officials generally have the right and duty to control property and possessions within the facility under their supervision." Murcia v. Cnty. of Orange, 226 F. Supp. 2d 489, 498–99 (S.D.N.Y. 2002).

Accordingly, plaintiff's cell search claim must be dismissed.

D.   Excessive Force Claim Arising from Alleged Second Assault

Defendants argue plaintiff cannot state a claim for the alleged second assault that occurred in or around Green Haven's medical unit, because his allegations are conclusory.

The Court agrees.

"[T]o survive a Rule 12(b)(6) motion to dismiss, a pro se plaintiff's factual allegations must at least be enough to raise a right to relief above the speculative level." Karupaiyan v. CVS Health Corp., 2021 WL 4341132, at *6 (S.D.N.Y. Sept. 23, 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555). Even in a pro se case, "threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius,

618 F.3d 162, 170 (2d Cir. 2010).  The Court also "cannot invent factual allegations" plaintiff

has not pleaded.  Id.

Plaintiff's sole allegation regarding the purported assault is that "while escorted by C.O.

Dakin and Colombos and taken to medical unit isolation cell it is where another assault upon

plaintiff took place." (Opp. at ECF 4).  Plaintiff does not allege who assaulted him, how he was

assaulted, or the injuries he sustained.  This is insufficient to survive a motion to dismiss.

Santiago v. City of New York, 697 F. App'x 36, 37 (2d Cir. 2017) (summary order) (agreeing

with district court that "advancement of only conclusory allegations about the alleged assault

requires dismissal of [plaintiff's] complaint").

Accordingly, any claim based on plaintiff's purported second assault by an unidentified

perpetrator in or near the medical unit must be dismissed.

E.      Lack of Personal Involvement in Constitutional Violations

Defendants C.O. Colombos, Hearing Officer Gutwein, and Dr. Uzo argue plaintiff's other

claims against them must be dismissed because plaintiff has not alleged facts showing they were

personally involved in the alleged constitutional violations.

The Court agrees with respect to plaintiff's remaining Section 1983 claims, which are for

excessive force arising out of (i) the purported assault by C.O.s Crofoot and Flanagan during the

cell search, and (ii) the purported assault by C.O. Hazelwood in the medical unit.

1.      Legal Standard

To state a claim under Section 1983, a plaintiff must allege facts showing defendants'

direct and personal involvement in the alleged constitutional deprivation.  See Spavone v. N.Y.

State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit

15

that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). A defendant is liable under Section 1983 "only if that defendant took an action that deprived the plaintiff of his or her constitutional rights." <u>Faulk v. N.Y.C. Dep't of Corr.</u>, 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014). Importantly, a defendant is not liable if their "failure to act deprived plaintiff" of such rights. <u>Id</u>.

### 2. C.O. Colombos

Plaintiff alleges C.O. Colombos "escorted" him to a "medical unit isolation cell." (Compl. at ECF 5–6). During this time, the second alleged "assault upon plaintiff took place," perpetrated by an unspecified individual. (<u>Id</u>.). Thereafter, C.O. Hazelwood sprayed plaintiff with "another whole canister of chemical agent." (<u>Id</u>. at ECF 6).

However, merely escorting an inmate is insufficient to establish personal involvement in a constitutional violation. <u>See</u> <u>Ismael v. City of New York</u>, 2018 WL 4757950, at *2 (S.D.N.Y. Sept. 28, 2018) (dismissing claim against officer for lack of personal involvement when his "only role in the alleged constitutional violations was to escort Plaintiff . . . part of the way back to the housing area").

Accordingly, plaintiff's excessive force claim against C.O. Colombos must be dismissed.

### 3. Hearing Officer Gutwein and Dr. Uzo

Because the complaint and opposition lack any allegations showing Hearing Officer Gutwein or Dr. Uzo were involved in the purported assaults, plaintiff's excessive force claims against them must be dismissed. <u>See</u> <u>Davis v. Cheverko</u>, 2017 WL 6397749, at **4–5 (S.D.N.Y. Dec. 13, 2017).

F.     State Law Claims

Finally, defendants broadly argue, "to the extent that the pro se Complaint could be read

to raise claims under New York State law, they are barred" under N.Y. Correction Law Section

24.  (Doc. #23 ("Defs. Mem.") at 14).

The Court agrees.

Drawing all reasonable inferences in plaintiff's favor, the Court does not identify any

state law claims in the complaint or opposition.  The only potential reference to such claims is

plaintiff's allegation that "[t]he jurisdiction of this Court is predicated upon 28 U.S.C. § 1331

and the doctrine of Pendent Jurisdiction."  (Opp. at ECF 1 (emphasis added)).

Regardless, even if plaintiff sought "to assert state law claims arising out of the events at

issue, they are barred by New York Correction Law § 24." Barnes v. Uzu, 2022 WL 784036, at

*18 (S.D.N.Y. Mar. 15, 2022).  New York Correction Law Section 24 states:

1.  No civil action shall be brought in any court of the state, except by the attorney
    general on behalf of the state, against any officer or employee of the department,
    . . . in his or her personal capacity, for damages arising out of any act done or
    the failure to perform any act within the scope of the employment and in the
    discharge of the duties by such officer or employee.

2.  Any claim for damages arising out of any act done or the failure to perform any
    act within the scope of the employment and in the discharge of the duties of any
    officer or employee of the department shall be brought and maintained in the
    court of claims as a claim against the state.

"The Second Circuit has held that this provision prevents federal courts from exercising pendent

jurisdiction over state law claims appended to federal claims brought pursuant to 42 U.S.C. §

1983." Sughrim v. New York, 503 F. Supp. 3d 68, 98 (S.D.N.Y. 2020).

Here, plaintiff does not allege defendants acted outside the scope of their DOCCS

employment.  Thus, any potential state law claims against defendants "would be barred in New

York state courts" such that "this Court equally lacks jurisdiction over the claims." Hassell v.

17

Fischer, 96 F. Supp. 3d 370, 385 (S.D.N.Y. 2015), <u>affirmed in part and vacated and remanded in part on other grounds,</u> 879 F.3d 41, 52 (2d Cir. 2018).

Accordingly, to the extent plaintiff purports to bring state law claims, they must be dismissed.

IV.    <u>Leave to Replead</u>

As explained in Part III.A <u>supra</u>, plaintiff's failure to intervene claim and any claim premised on the allegedly deficient disciplinary hearing are dismissed.  However, read liberally, plaintiff's allegations about the disciplinary hearing suggest plaintiff may support a valid due process claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000).  Similarly, plaintiff's allegations suggest he may have a valid failure to intervene claim against Sgts. Gunsett and Mangino related to the alleged assault by C.O. Hazelwood near the medical unit.

But as to plaintiff's claims based upon purportedly inadequate medical care and the cell search, as well as his excessive force claims against C.O. Colombos, Hearing Officer Gutwein, and Dr. Uzo, the Court finds that repleading would be futile.  The problems with those claims are substantive; additional allegations or improved pleading will not cure them.  See <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112.  Likewise, "better pleading will not cure" any state law claims or claims against defendants in their official capacities.  <u>Id.</u>

Accordingly, although he is not required to do so, if plaintiff wishes to pursue a due process claim related to the disciplinary hearing and/or a failure to intervene claim against Sgts. Gunsett and Mangino arising out of C.O. Hazelwood's purported assault, he may file an amended complaint.   To the greatest extent possible, plaintiff's amended complaint must address the deficiencies identified in this Opinion and Order.

To be clear, the Court is permitting (but not requiring) plaintiff to file an amended complaint, to pursue **only claims for: (i) excessive force against C.O.s Crofoot and Flanagan based on the alleged assault in plaintiff's cell, and against C.O. Hazelwood based on the events in or near the medical unit, (ii) failure to intervene against Sgts. Gunsett and Mangino related to C.O. Hazelwood's purported assault in or near the medical unit; and (iii) due process violations related to plaintiff's allegedly deficient disciplinary hearing.** These claims may not be asserted against defendants in their official capacities.

**The amended complaint will completely replace, not supplement, the existing complaint.** Therefore, plaintiff must include in the amended complaint all information necessary for these claims, including all relevant allegations from his original complaint and opposition.

## CONCLUSION

The motion to dismiss the complaint in part is GRANTED.

All of plaintiff's claims are dismissed, except for his Eighth Amendment excessive force claims against defendants Crofoot, Flanagan, and Hazelwood, in their individual capacities.

Plaintiff is granted leave to amend his complaint, in accordance with the instructions above. By April 21, 2023, plaintiff shall file his amended complaint using the attached form. If plaintiff fails to file an amended complaint by April 21, 2023, the Court will deem the original complaint as the operative complaint.

The deadline for defendants Crofoot, Flanagan, and Hazelwood to file an answer is STAYED pending plaintiff's deadline for filing an amended complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate defendants Colombos and Dr. Uzo from the docket, and terminate the motion.  (Doc. #22).

Chambers will mail a copy of this Opinion and Order, and all unpublished opinions cited, to plaintiff at the address on the docket.

Dated: February 21, 2023
          White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

No. 22 CV 635 (VB)

(To be filled out by Clerk's Office)

**AMENDED
COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                Middle Initial            Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                          State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Defendant 2:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Defendant 3:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Defendant 4:

First Name          Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                    State               Zip Code

Page 3

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____